UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Lewis Bailey, | ) C/A No. 4:08-1630-HFF-TER |
| Plaintiff, | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| John Ozmint, Director of the South Carolina Department of Corrections;<br>Tim Riley, Warden of Tyger River Correctional Institution; and<br>Sgt. John Long, | ) |
| Defendants. | ) |

## I. PROCEDURAL BACKGROUND

The plaintiff, Lewis Bailey ("plaintiff/Bailey"), filed this action under 42 U.S.C. § 1983[1] on April 21, 2008. At all times relevant to the allegations in the plaintiff's complaint, he was an inmate at the Tyger River Correctional Institution ("TRCI"). Plaintiff alleges that his constitutional rights were violated. On December 9, 2008, defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure along with a memorandum and exhibits in support of that motion. (Doc. #30). Because the plaintiff is proceeding pro se, he was advised on or about December 10, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. Plaintiff filed a response on December 22, 2008.

On December 8, 2008, plaintiff filed a motion for summary judgment. Defendants filed a response on December 23, 2008. (Docs. #29, #36).

## II. SUMMARY JUDGMENT STANDARD

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case

makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### III. DISCUSSION

### A. FACTS PRESENTED

Plaintiff alleges that his Constitutional rights were violated when he was placed in a cell with no running water or toilet and, after having to urinate on the floor and refusing to clean it up, he was disciplined by the SCDC officer. Specifically, plaintiff asserts that in May 2007, he was transported to TRCI due to his age and the mandatory requirements under SCDC that he was required to attend the G.E.D. Program and was placed in housing Unit Nine which houses inmates who are required to attend the program if under the age of twenty-one. Plaintiff alleges that on July 11, 2007, he requested to go the bathroom outside his cell but, after having to wait for more than an hour, he lost control and urinated on the floor of his cell. When Officer Long saw the urine, he brought paper towels and bleach and instructed plaintiff to clean it up. Plaintiff alleges that he stated that he would clean it up with the proper material but refused to use his bear hands. As a result of refusing to clean up the urine with the paper towels and bleach, he was brought before a disciplinary hearing and lost telephone privileges and ninety day cell restriction for failing to obey an order. Plaintiff also asserts

3

that after his transfer to TRCI, he accepted the Islamic Faith but was denied the right to grow a beard in accord with his Islamic Faith pursuant to the SCDC Inmate Grooming Policy which he alleges is a violation of RLUIPA.

Plaintiff seeks a declaratory judgment stating that the actions of the defendants violated the Eighth Amendment of the United States Constitution, that the Inmate Grooming Standards Policy is in violation of the RLUIPA and is not the least restrictive means in compelling the defendants' interest in security.

Plaintiff seeks an injunction ordering the defendants to immediately cease dead bolting inmates in individual cells in Unit Nine that do not have toilets or running water, cease classifying inmates in Unit Nine where disciplinary infractions have not occurred, and to immediately carry out necessary changes to the inmate Grooming Policy to comply with the RLUIPA.

Defendants filed a motion for summary judgment arguing that there is no constitutional violation because inmates are given access to running water and to toilet facilities on a regular basis and upon their request. Defendants further argue that claims regarding the RLUIPA and Grooming Policy should be dismissed as the record clearly demonstrates that the SCDC policies further a compelling governmental interest and is the least restrictive means necessary. Defendants also argue that they may not be held liable under a *respondeat superior* theory, that the record fails to demonstrate personal involvement of each defendant in the alleged deprivations, and that they are entitled to both Eleventh Amendment Immunity and Qualified Immunity

### B. CONDITIONS OF CONFINEMENT

As previously stated, plaintiff argues that due to his young age, he was transferred to TRCI

and housed in Unit Nine which does not contain toilets and running water in the cells. Plaintiff asserts that the officers make a walk through every hour and, on July 11, 2007, he asked to go to the bathroom when the officer was making the walk through and was told to hold on a minute. After not returning within thirty minutes, plaintiff alleges he got defendant Sergeant Long's attention but that Sergeant Long held up his hand for plaintiff to stop banging on the door to his cell and did not come to let him use the bathroom. Plaintiff alleges that when he felt he was losing control of his bodily functions, he attempted to urinate under his cell door to keep his cell from retaining the urine. After refusing to clean the urine up with paper towels and bleach, he was disciplined. Plaintiff requests injunctive and declaratory relief only. Plaintiff requests an injunction ordering the defendants to cease dead bolting inmates in individual cells in Unit Nine, and to cease classifying inmates in Unit Nine under regulations that are arbitrary to SCDC Policy.

As plaintiff is no longer housed in Unit Nine due to obtaining the age of 21, and completing his GED, and Unit #9 at TRCI houses male inmates under the age of twenty-one (21) (See Affidavit of Defendant Warden Riley ) his request for declaratory or injunctive relief with regards to these issues are MOOT as he is no longer subjected to the conditions complained of in Unit Nine. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition of which he complains. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).[2]

---

[2] Additionally, the inmate must show more than de minimis pain or injury. Id. at 9. Although a plaintiff need not show a significant injury, the court in Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Plaintiff has failed to provide any evidence of an injury.

## C. INMATE GROOMING POLICY and RLUIPA

As previously discussed, plaintiff alleges that he converted to the Islamic faith after entering the TRCI and the Inmate Grooming Policy ("the Policy") denying him the right to grow a beard violates the RLUIPA.

Defendants submitted the affidavit of Warden Timothy Riley and a copy of the SCDC's Grooming Policy ("the Policy")(Policy number Op: 22.13), who attests that the policy requires all male inmates to maintain a hair cut no longer than one inch in length and prohibits beards. (Riley's affidavit). The Policy was instituted for legitimate penological reasons. Id. Based on experience of SCDC officials, inmates with long hair present a substantial safety concern to corrections' personnel, and other inmates. (See Riley affidavit and affidavit of Robert Ward, Director of Division of Operations). The objections for the Grooming Policy are maintaining safety and security, reducing sanitary conditions and other hygiene issues for officers who interact with inmates, reducing opportunities for the hiding of contraband, and preventing inmates from dramatically altering their appearance in the event of an escape. Id. Defendants argue that plaintiff has failed to plead or present any evidence that the RLUIPA is applicable to the program or activity that he is challenging, i.e., that the SCDC Grooming Policy is implemented by or had any relation to federal financial assistance nor has he shown any impact of the Grooming Policy on interstate or foreign commerce pursuant to 42 U.S.C. §2000cc-1(b); Ephraim v. Angelone, 313 F.Supp.2d 569 (E.D. Va. 2003).

Even assuming plaintiff can demonstrate evidence sufficient to establish the threshold showing that RLUIPA is applicable, defendants argue plaintiff has failed to show that the enforcement of the Grooming Policy imposes a substantial burden on his religious exercise as required under the RLUIPA. Defendants rely on the language by the Fourth Circuit in Hines v.

South Carolina Department of Corrections, 148 F.3d 353 (4th Cir. 1998), which states that the SCDC Grooming Policy "May have an incidental effect of preventing the inmates from wearing their hair and beards as their religion prescribes." (Memorandum, p.10). Thus, defendants argue that plaintiff makes no allegation that the Grooming Policy has had a substantial burden on his exercise of religion or negatively impacted his Muslim faith.

Assuming the Grooming Policy is found to substantially burden the plaintiff's religious exercise, defendants argue that there is no reasonable challenge that the Policy further compels governmental interests by maintaining order, discipline and safety. See Hines, supra. Defendants further argue that in addition to showing that a compelling governmental interest is furthered by the Policy, they have shown that the Policy is the least restrictive means of accomplishing those compelling governmental objectives through Robert Ward's affidavit describing how earlier attempts by SCDC to allow inmates in close custody units to grow their hair proved difficult and unworkable. Ward describes in his affidavit a disturbance in January 2004, in the SMU at Broad River Correctional Institution, where "a number of keys were missing and it is believed that inmates with long hair and beards were able to conceal those keys in their hair or beards. (Ward affidavit). It was not until all the inmates were subjected to haircuts and shaves that the keys were located. Id. Further, Ward attests, as a general rule, "because the hair and beards made it more difficult and unpleasant for officers to search, the chances of detection of the contraband were lessened. With closely cropped hair and no beards under the current policy, the inmates can no longer use their hair or beards as a place to hide contraband." Id. Ward also attests that the long hair and beards created a safety risk for the inmates as an inmate with long hair tends to be more vulnerable to other inmates. Id. Ward states that "the prior policy where inmates such as the plaintiff were allowed to grow their hair and beards

also caused security concerns in the event of an escape." Id. Ward attests that, "[b]y having long hair and beards, inmates were able upon escape to dramatically alter their appearance which would assist them in avoiding detection and re-capture. By requiring the inmates to wear their hair closely cropped in accordance with the grooming standards, it eliminates the opportunity to change their appearance upon escape. Escape from SCDC, even from a Special Management Unit or while being transported outside the institution, is always a real possibility and raises legitimate concerns regarding the public safety." Id. Additionally, Ward attests that long hair and beards grown by inmates creates hygiene and sanitation problems for the officers. Ward attests that it makes it more difficult and more unsanitary for officers to conduct needed searches. Id.

Additionally, defendants point out that the Court in Hines held that "Searches of inmates with long hair are less effective and more time-consuming than searches of inmates with short hair." Hines, 148 F.3d at 358.

In 2000, Congress enacted the RLUIPA, 42 U.S.C. § 2000cc-1(a)(1)-(2), which provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." In passing RLUIPA, Congress "resurrected RFRA's language, but narrowed the scope of the act, limiting it to laws and regulations concerning institutionalized persons or land use." Murphy v. Missouri Dept. Of Corrections, 372 F.3d 979, 987 (8th Cir. 2004). The proper standard of review under RLUIPA is: (1) have the defendants imposed a substantial burden on the plaintiff's exercise of religion; (2) does the substantial burden further a compelling governmental interest; and (3) has it been done by the least restrictive means. *See* Lovelace v. Lee, 472 F.3d 176, (4th Cir. 2006).

8

The RLUIPA does not define "substantial burden," but the Supreme Court has defined the term in the related context of the Free Exercise clause. According to the Court, a "substantial burden" has been defined as: "where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Board, Indiana Employment Security Division, 450 U.S. 707, 717-18 (1981). However, the burden placed on the religious exercise "must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief which is central to religious doctrine." Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir.1987), *aff'd. sub nom*., Hernandez v. Commissioner, 490 U.S. 680 (1989). In Lovelace v. Lee, 472 F.3d 174 (4th Cir. 2006), the Fourth Circuit Court of Appeals stated:

> We likewise follow the Supreme Court's guidance in the Free Exercise Clause context and conclude that, for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 187 (quoting *Thomas*, 450 U.S. at 718).

It is clear that the RLUIPA bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion. See 42 U.S.C. § 2000cc-5(7)(A); Cutter v. Wilkinson, 544 U.S. 709, 725 n.13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005); Smith v. Ozmint, 444 F. Supp.2d 502, 506 n.4 (D.S.C. 2006). The Act does not, however, preclude inquiry into the sincerity of a prisoner's professed religiosity. Id. However, defendants do not appear to contest the sincerity of plaintiff's beliefs. Nonetheless, such a determination would not be appropriate in this case under Rule 56 on the record presented.

9

Assuming plaintiff has shown that the referenced SCDC Grooming Policy places a substantial burden on the exercise of his religion, defendants have put forth evidence that the policy serves the compelling interest of security, insofar as long hair and beards provides a place for inmates to hide weapons and other contraband and especially prevents prisoners from dramatically changing their appearance in the event of an escape. The Grooming Policy prevents inmates from being able to alter their appearance upon escape and, thus, aids in the re-capture process. (See Riley and Ward affidavits). The Fourth Circuit agrees that "maintaining order, discipline and safety in prisons" are "compelling governmental and penological interests." Hines v. South Carolina Department of Corrections, 148 F.3d 353, 358 (4th Cir.1998); Cutter v. Wilkinson, 544 U.S. 709, 722 (2005) ("We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety."). In fact, plaintiff concedes that the defendants present compelling state interests in the policy. Accordingly, the defendants have met the first prong of their burden under the RLUIPA.

Additionally, defendants argue that the Grooming Policy is the least restrictive means. As set out above, defendants submitted the affidavit of Ward who attests that SCDC Policy No. OP-22.12 "Special Management Unit-SMU"was amended by Director Ozmint effective May 1, 2004, to require all inmates housed in a SMU to comply with SCDC Policy No. Op-22.13 "Inmate Grooming Standards." (Ward affidavit). Specifically, paragraph 32.1 was amended to require all inmates, including any inmates claiming a religious objection to the grooming standards, to be in compliance with the Grooming Policy and authorized the use of forced hair cuts or shaves if an inmate refused to comply with the policy. Id. Ward attests that the SCDC policy No. Op. OP-22.12 was first amended to allow inmates to grow their hair but be reclassified to a higher custody level.

However, because the Department's experience allowing that exception to the grooming standards proved difficult and unworkable for several reasons another change was made in the Policy effective May 1, 2004. Id. Ward attests that the Department had experienced significant problems agency-wide with a shortage of space in the SMU where inmates are housed who have demonstrated an unwillingness to conform to the rules of the general population. Id. Ward avers that the change in the SCDC Grooming Policy has served an important purpose of making additional cell space available in SMU units to house inmates who legitimately pose security threats, as well as, those inmates guilty of major disciplinary violations rather than inmates who were housed in SMU simply because they were opposed to the grooming standards and wanted to grow their hair. (Ward affidavit). Ward also attests that there was a problem with inmates who wanted to be in SMU for reasons other than a religious objection to the Grooming Policy whereby inmates could choose not to cut their hair, violate the Grooming Policy and be assigned to a SMU, thereby avoiding work assignments and, at least in the past, have a single cell. Id. Ward attests that the change in policy has allowed inmates who were in SMU only because they failed to comply with the grooming standard and for no other reason to be released back into the general population. Id. Thus, the change in the Policy has alleviated the conditions of overcrowding in SMU units and has freed up the needed space to house inmates who need to be in SMU, thereby making the institutions much safer and more secure for all inmates and staff. Id. Further, housing inmates in SMU requires additional manpower and, as a result, more personnel than is required to supervise the general population inmates and the change to the SCDC Policy has contributed to a savings in manpower and allowed the existing resources to be used more efficiently and to be directed to more pressing and needed areas so as to maintain the necessary level of security, order, and discipline. Id.

Ward also attests the change to the Policy "has also alleviated hygiene issues for the officers in SMU units who have constant and close interaction with the inmates" and the long hair and beards made it more difficult and more unsanitary for officers to conduct needed searches. Id. Ward also discussed the fact if inmates were allowed to have "long hair and beards", inmates would be able upon escape to dramatically alter their appearance which would assist them in avoiding detection and re-capture. Id.

Defendants assert they have met the test under the RLUIPA of showing that the Policy is the least restrictive means of accomplishing those compelling governmental interests of security and preventing a worsened hygiene/sanitation problem. Id.

In his response, plaintiff in essence conclusively argues that the Policy is not the least restrictive means of accomplishing the compelling governmental interests as set out above. Also, plaintiff fails to show how any less restrictive means would not create a burden on his religion.

Based on the record presented, no issue of fact exists, and defendants have met the second prong of their burden under the RLUIPA that the change in policy is the least restrictive means. Therefore, given the record before the court and "the requirement that courts give due deference to the expertise and experience of prison officials," it is recommended that defendants' motion for summary judgment be granted. See McRae v. Johnson, 261 Fed. Appx. 554 (4th Cir. 2008) *citing* Hoevenaar v. Lazaroff, 422 F.3d 366 (6th Cir.2005) (upholding prison ban on long hair against RLUIPA challenge), *cert. denied*, 549 U.S. 875, 127 S.Ct. 187, 166 L.Ed.2d 132 (2006).

### D. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against them for money damages

are barred pursuant to their Eleventh Amendment Immunity.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that defendants in their official capacities are employees of the SCDC and, therefore, are entitled to Eleventh Amendment immunity from monetary damages.

## E. QUALIFIED IMMUNITY

The defendants argue that they are entitled to a grant of qualified immunity under the facts as presented in the plaintiff's complaint.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary

> functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. As stated above, plaintiff fails to show a violation of a clearly established right. Also, assuming, *arguendo*, a right has been violated, based on the record presented the undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## IV. CONCLUSION

Based on the reasons stated above, it is RECOMMENDED that defendants' motion for summary judgment (Doc. #30) be GRANTED IN ITS ENTIRETY and plaintiff's motion for summary judgment (Doc.#29) be denied.

It is FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT, or, alternatively, be DENIED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers III
United States Magistrate Judge

July 27, 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**